UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

CIVIL CASE NO. 22-21-DLB-EBA

JOHN & LENORA BLACKBURN                                                         PLAINTIFFS

v.                         **MEMORANDUM OPINION AND ORDER**

UNITED STATES OF AMERICA                                                         DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendant's Motion for Summary Judgment, or in the alternative, Motion to Exclude Plaintiffs' Experts (Doc. # 23). Plaintiffs having filed their Response (Doc. # 25), and Defendant having filed its Reply (Doc. # 26), the Motion is now ripe for review. For the following reasons, Defendant's Motion is **denied.**

I.    FACTUAL AND PROCEDURAL BACKGROUND

This case concerns the medical care of Army veteran Mr. John Blackburn. (Doc. # 1 ¶ 13). When in the Army, Mr. Blackburn was exposed to Agent Orange, a known carcinogen. (*Id.* ¶ 14). Due to this exposure, Mr. Blackburn's medical care at the Prestonburg VA Clinic has included routine surveillance of his chronic conditions and cancer screenings. (*Id.* ¶ 18). In 2000, Mr. Blackburn began to complain of rectal bleeding. (*Id.* ¶ 19).

On June 16, 2000, Mr. Blackburn underwent a colonoscopy to investigate the bleeding. (*Id.* ¶ 20). The results were normal. (*Id.*). Almost five years later, on February 7, 2005, Mr. Blackburn underwent another colonoscopy. (*Id.* ¶ 21). "The results revealed internal and external hemorrhoids, as well as cecal and rectal polyps, with five polyps

1

which were removed." (*Id.*). Based on these findings, the Department of Veteran Affairs ("VA") recommended Mr. Blackburn undergo a colonoscopy every three to five years. (*Id.* ¶ 22). On July 19, 2012, Mr. Blackburn again underwent a colonoscopy. (*Id.* ¶ 24). The results were "normal," and follow up was recommended in seven to 10 years. (*Id.*).

In early 2013, Mr. Blackburn again began to experience rectal bleeding. (*Id.* ¶ 25). He underwent three additional hemoccult tests—two of which were positive, indicating there was occult blood in his stool. (*Id.*). However, Mr. Blackburn's physician believed they may have been false positives due to Mr. Blackburn's consumption of red meat. (*Id.* ¶ 26). The tests were completed again, and this time came back negative. (*Id.*). However, Mr. Blackburn continued to experience and complain of rectal bleeding. (*Id.* at ¶ 29).

Mr. Blackburn was examined again on July 31, 2014. (*Id.* ¶ 30). His bleeding was attributed to hemorrhoids and the examining physician noted Mr. Blackburn's next colonoscopy was due in 2017. (*Id.*). On June 2, 2015, Mr. Blackburn requested a gastrointestinal consultation for the purpose of scheduling a colonoscopy. (*Id.* ¶ 32). The colonoscopy was requested on his behalf and then subsequently canceled by a VA physician. (*Id.* ¶ 33). No reason was given for the cancellation. (*Id.*). Mr. Blackburn raised his concerns regarding the cancellation to VA Dr. Drema K. Hunt and informed Dr. Hunt again of the rectal bleeding he was experiencing. (*Id.* ¶ 36).

For the next three years, Mr. Blackburn "continued to be plagued by bouts of rectal bleeding." (Id. ¶ 40). On June 6, 2016, Mr. Blackburn again consulted with Dr. Hunt and informed her of the continued bleeding. (*Id.* ¶ 41). No request for a colonoscopy was placed by Dr. Hunt. (*Id.*). On June 13, 2017, Mr. Blackburn had his annual check-up with

2

VA Dr. Yesenia Martinez-Robles.  (*Id.* ¶ 42).  The notes from this check-up included Mr. Blackburn's complaints of rectal bleeding and noted he was due for a colonoscopy in 2017.  (*Id.* ¶ 42).  Despite this note and his three visits to his primary care physician in 2017, no colonoscopy was ordered.  (*Id.* ¶ 43).

In February 2019, Mr. Blackburn's primary care physician placed an order for colonoscopy which occurred on June 24, 2019.  (*Id.* ¶ 45).  As a result of this colonoscopy and further testing, Mr. Blackburn was diagnosed with stage II colorectal cancer.  (*Id.* ¶ 46-49).  Mr. Blackburn has undergone extensive chemotherapy and multiple surgeries to address his cancer.  (*Id.* ¶ 56).   At the time of the filing of his Complaint, Mr. Blackburn was in stable condition and his prognosis is fair.  (*Id.*).

Mr. Blackburn and his wife filed the instant action on March 25, 2022.  (Doc. # 1).  They raised claims of negligence and loss of consortium pursuant to the Federal Tort Claim Act, alleging that the VA was negligent in not ordering a colonoscopy between the years of 2015 and 2018 in light of Mr. Blackburn's medical history.  (*Id.* 9-10).  The parties conducted extensive discovery, which included depositions of Mr. Blackburn's VA physicians Dr. Yesenia Martinez-Robles and Dr. Drema K. Hunt.  (Docs. # 18, 19).  The parties also deposed multiple experts, including Drs. Solny, Rice, and Kwon.

On September 14, 2023, the United States ("Defendant") filed the instant Motion for Summary Judgment, or in the alternative, Motion to Exclude Plaintiffs' Experts.  The Plaintiffs having filed their response, and the Defendant having filed its reply, the Motion is now ripe for this Court's review.

## II. ANALYSIS

### A. Standard of Review

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment "bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Plant v. Morton Int'l Inc.*, 212 F.3d 929, 934 (6th Cir. 2000)).

To defeat a motion for summary judgment, the non-moving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). In deciding a motion for summary judgment, the Court must look at the evidence "in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). Following the Court's review of the record, if a "rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998). "Summary judgment is inappropriate where there is a genuine conflict 'in the evidence, with affirmative support on both sides, and where the question is which witness to believe.'" *Duvall v. United States*, No. 3:19-cv-2-GFVT-EBA, 2021 WL 2651805, at *2 (E.D. Ky. June 28, 2021) (quoting *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013)).

**B.     Discussion**

Plaintiffs bring their claims under the Federal Tort Claims Act ("FTCA"). (Doc. # 1 ¶ 1). Liability under the FTCA is "determined by the law of the place where the alleged tort occurred." *Crane v. United States*, No. 3:11-CV-568-JHM, 2014 WL 321134, at *1 (W.D. Ky. Jan. 29, 2014) (citing 28 U.S.C. § 1364(b)). In this case, the Court will apply Kentucky substantive law to determine liability because the alleged injury occurred at Prestonburg VA Clinic, which is located in Prestonburg, Kentucky. (Doc. # 1 ¶ 6).

To prove medical malpractice under Kentucky law, "a plaintiff must introduce evidence, in the form of expert testimony, demonstrating (1) the standard of care recognized by the medical community as applicable to the particular defendant, (2) that the defendant departed from that standard, and (3) that the defendant's departure was a proximate cause of the plaintiff's injuries." *Heavrin v. Jones*, No. 2002-CA-000016-MR, 2003 WL 21673958, at *1 (Ky. Ct. App. July 18, 2003). If the plaintiff is unable to establish even one element, the Court may grant summary judgment. *Id.* at *2.

In a medical malpractice case, "the burden of proof is upon the plaintiff to establish the negligence of a physician by medical or expert testimony." *Nalley v. Banis*, 240 S.W.3d 658, 660-61 (Ky.Ct.App. 2007) (citing *Morris v. Hoffman,* 551 S.W.2d 8, 9 (Ky.Ct.App. 1977)). The expert testimony informs the jury of the applicable medical standard of care. *Blankenship v. Collier*, 302 S.W.3d 665, 675 (Ky. 2010). Defendant argues that Plaintiffs cannot meet their burden to show breach of the standard care or causation based on the undisputed facts and their experts' testimony. (Doc. # 23 at 1). Alternatively, Defendant argues Plaintiffs' experts should be excluded because their testimony is not reliable. (*Id*.).

The dispute in this case centers on what the applicable standard of care was, and at what point that standard dictated that Mr. Blackburn undergo a colonoscopy. Plaintiffs argue the VA was negligent because it "fail[ed] to schedule colonoscopies in 2015, 2016, 2017 and 2018 in light of Mr. Blackburn's previous history of colon polyps[,]" and "his consistent complaints of rectal bleeding and positive hemoccult tests[.]" (Doc. # 1 ¶ 62.). Plaintiffs argue this history and Mr. Blackburn's complaints required that the VA conduct a diagnostic colonoscopy, which was indicated earlier than a screening colonoscopy because of Mr. Blackburn's complaints of rectal bleeding. (Doc. # 25 at 1-2). Defendant argues that the physicians acted appropriately in following the guidelines for a screening colonoscopy, which did not necessitate colonoscopies on those dates.

Because expert testimony is required to establish negligence in a medical malpractice case, *see Nalley,* 240 S.W.3d at 660-61, the Court will first decide whether the testimonies of Plaintiffs' experts are admissible.

### C. Admissibility of the Expert Testimony

Under the Federal Rule of Evidence 702, an expert may testify if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

A district court assesses expert evidence by determining "whether the evidence 'both rests on a reliable foundation and is relevant to the task at hand.'" *Newell Rubbermaid,*

*Inc. v. Raymond Corp.,* 676 F.3d 521, 527 (6th Cir. 2012) (quoting *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993)).

The Supreme Court in *Daubert* established a "flexible" inquiry into whether an expert's testimony meets the criteria of Rule 702. *Daubert*, 509 U.S.at 594. This inquiry requires considering factors such as "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting *United States v. Langan,* 263 F.3d 613, 621 (6th Cir.2001)).

However, these factors are a "non-exclusive checklist." *Id.* (citing *Daubert,* 509 U.S. at 593-94). "[T]he law grants a district court the same broad latitude when it decides *how* to determine reliability." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999) (emphasis in original). In determining whether the expert's opinion is reliable, the role of the district court "is not to determine whether [the expert opinion] is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529-30. The question for the Court is "whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert*, 509 U.S. at 592–93. Additionally, "rejection of expert testimony is the exception, rather than the rule, and [the Court] will generally permit testimony based on allegedly erroneous facts when there is some support for those facts in the record." *Redmond v. United States*, 194 F. Supp. 3d 606, 616 (E.D. Mich. 2016) (quoting *In re Scrap Metal Antitrust Litigation*, 527 F.3d at 530).

Defendant seeks to exclude three of Plaintiffs' witnesses—two whose testimony goes to the issue of standard of care and breach of the standard of care, and one whose testimony goes to causation. The Court will consider the admissibility of each expert's testimony in turn.

### 1. Dr. Solny

Plaintiffs' expert Dr. Solny is board certified in gastroenterology and internal medicine. (Doc. # 23-10 at 4). Defendant argues Dr. Solny's opinion testimony is inadmissible because it is not based on reliable principles and methods. (Doc. # 23 at 13). In making this argument, Defendant primarily focuses on Dr. Solny's opinion in his expert report that "[p]ersistent rectal bleeding in 2015 required re-evaluation in search of a bleeding source." (*Id.*) (quoting Doc. # 23-10 at 6). When asked about this opinion at his deposition, Dr. Solny said it was based on a 2003 study involving screening sigmoidoscopies. (Doc. # 23 at 13). Defendant argues that reliance on this study renders Dr. Solny's opinion unreliable because it relates to a different procedure and is outdated because "the [American Gastroenterological Association] has updated the colonoscopy screening guidelines three times, in 2006, 2012, and again in 2020, and has chosen to extend the time between screening colonoscopies as technology has improved rather than compressing the time between colonoscopies as Dr. Solny's testimony suggests." (Doc. # 23 at 14).

However, as Plaintiffs note, Dr. Solny did not form his opinion based solely on this study. (Doc. # 25 at 16). This was one study he cited from memory while also relying on his expertise in this area of medicine and an extensive review of Mr. Blackburn's medical records. The role of the Court is "not to determine whether [Dr. Solny's opinion] is correct,

but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008). Even if an expert's opinions seem "shaky," this does not necessarily mean the opinions are unsupported assumptions. *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000). The Court concludes Dr. Solny's opinion is admissible because it is based on the reliable foundation of his knowledge and experience in this area of medicine, in addition to related studies. *See id.* at 388.

### 2. Dr. Rice

Dr. Rice is an osteopath board certified in family practice. (Doc. # 23-12 at 2). Defendant argues Dr. Rice's opinions should be excluded because her opinions regarding when a colonoscopy should have been ordered are speculative and not based on the facts of this case. (Doc. # 23 at 16-18). Plaintiffs respond by arguing that Dr. Rice's opinions are based on her education, experience, and training, which she applied when she reviewed Mr. Blackburn's medical records. (Doc. # 25 at 17).

Dr. Rice's testimony is appropriate based on her experience as an osteopath board certified in family practice. Under Rule 702 "an expert may be qualified on the basis of experience." *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 980 (6th Cir. 2004) (quoting Fed. R. Evid. 702 advisory committee's note (2000 Amendments)). When relying solely on experience, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Antioch Co. Litig. Tr. v. Morgan*, 633 F. App'x 296, 300 (6th Cir. 2015) (quoting Fed. R. Evid. 702 advisory committee's note (2000 Amendments)).

Dr. Rice's testimony is appropriately based on her experience and the facts of this case because she clearly reviewed Mr. Blackburn's medical records in reaching her opinions. Dr. Rice discussed Mr. Blackburn's medical records and specific complaints of rectal bleeding in her expert report and deposition. (*See, e.g.*, Doc. 23-12 at 4-5; Doc. # 24-9 at 26-30). Dr. Rice further explained why, as a primary care physician, she would have further investigated the bleeding in October 2013 when she stated that "[i]t is not typical for a patient to come in with an acute problem, and say, oh by the way, this has been going on for 20 years, if it's not a concern that they're having." (*Id.* at 28). She then explained that when a patient comes in with a "chief complaint" such as Mr. Blackburn did in October 2013, a number of questions should have been asked regarding that complaint. (*Id.* at 30-31). She also noted the difference in screening and diagnostic colonoscopies, and that for the former there are set standards whereas there is no set time frame or guideline for the latter. (*Id.* at 43).

Defendant also argues that Dr. Rice's "inability to articulate what the standard of care was and when it was breached" renders her opinion unreliable. (Doc. # 23 at 16). Defendant cites various portions of Dr. Rice's testimony regarding her opinions on when a colonoscopy was indicated, and notes that Plaintiffs' other two witnesses disagreed with at least one of the dates. (*Id.* at 17). However, any objections Defendant has to Dr. Rice's opinion properly based on her experience go to the weight of her testimony, not its admissibility. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 531. Therefore, the Court concludes Dr. Rice applied her experience to the facts of this case when she reviewed Mr. Blackburn's records and formed her opinions by applying her expertise as a primary care physician. Therefore, Dr. Rice's testimony is admissible.

10

### 3. *Dr. Kwon*

Finally, Defendant seeks to exclude the testimony of Dr. Kwon. Dr. Kwon is an oncologist board certified in general surgery. (Doc. # 23-13 at 9). Defendant argues Dr. Kwon's testimony is unreliable because his conclusions are not supported by the studies he relies on, and his testimony would not be helpful to the jury. (Doc. # 23 at 23). Essentially, Defendant argues that "[a]ny layperson without a medical degree could deduce that Mr. Blackburn most likely contracted colorectal cancer at some point between 2012 and 2019 and that discovering the cancer sooner rather than later would have improved Mr. Blackburn's course of treatment." (*Id.* at 21).

First, Dr. Kwon's opinion rests on a reliable foundation because it is based on sufficient data. During his deposition, Dr. Kwon referred to the AGA screening guidelines and a Mayo Clinic study—the same study relied on by Defendant's expert. (Doc. # 23 at 22). Dr. Kwon also cited American Cancer Society reports and other medical studies in his expert report. (*See* Doc. # 23-13 at 10-14). These reports include data on growth rates of polyps and the development of cancer, which Dr. Kwon applied to the facts of this case. (*See id.*). The role of the Court is not to decide whether Dr. Kwon's opinion based on the guidelines and studies is correct—just that his opinion is not based on "unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529–30.

Second, Dr. Kwon's testimony regarding the time it takes for a polyp to develop into cancer would be helpful to the jury on the issue of causation because it would it help show whether a colonoscopy on the dates indicated by Plaintiffs would have even shown Mr. Blackburn's cancer. Therefore, the Court concludes that Dr. Kwon's testimony is admissible.

11

### D. Motion for Summary Judgment

Given the admissibility of all three of Plaintiffs' experts, the Court will now consider whether Plaintiffs have failed to meet their burden on any of the elements of a medical malpractice claim.

#### 1. Standard of care and breach of the standard of care

To meet their burden on summary judgment, Plaintiffs must introduce expert testimony that demonstrates a dispute of material fact as to "the standard of care recognized by the medical community as applicable to the particular defendant" and whether "the defendant departed from that standard." *Heavrin*, 2003 WL 21673958, at *1.

Defendant argues "the fact that Mr. Blackburn consistently complained about rectal bleeding over at least a twenty-year period does not mean that another colonoscopy was indicated sooner under the AGA guidelines or any other applicable standard of care." (Doc. # 23 at 12). However, this statement is based on a misreading of Plaintiffs' argument. Plaintiffs argue the standard of care required that Mr. Blackburn receive a *diagnostic* colonoscopy, whereas Defendant's motion for summary judgment rests on the guidelines of a *screening* colonoscopy. (Doc. # 25 at 1-2). Defendant argues in its reply that this distinction is "unsupported . . . and [was] never explained." (Doc. # 26 at 2). The Court disagrees and finds there is a dispute of material fact as to what type of colonoscopy was required and when it was indicated.

Plaintiffs' argument that Mr. Blackburn should have received a diagnostic colonoscopy is supported by the testimony of their experts. Dr. Kwon testified as to the difference in colonoscopies:

12

> I think one other thing that I should make clear is there's colonoscopy performed for screening and those have very set guidelines. And there's also colonoscopies that are done for diagnostic purposes with patients with complaints of symptoms that are related to . . . something that could be detected earlier. So that is, doesn't fit along those screening guidelines when you're talking about diagnostic purposes or symptoms. So in Mr. Blackburn's case, I'm talking more about the diagnostic purpose.

(Doc. # 24-5 at 55).  Dr. Rice also referred to this difference in her testimony, clarifying that "there's set standards for screening" but that "[w]hen it comes to diagnostics, there's no set standard or no set time frame."  (Doc. # 24-9 at 43).  Even Defendant's expert Dr. Sostok referred to this difference at one point when he testified that "you can do a procedure for more than one reason.  You can be doing it for diagnostic purposes and accomplish your screening goals and vice versa."  (Doc. # 24-12 at 90).

Plaintiffs allege that this difference in purposes of ordering a colonoscopy means that Mr. Blackburn should have gotten the 2015 diagnostic colonoscopy that was ultimately canceled by the VA, and its cancellation and lack of follow up was a breach of the standard of care.  Even Mr. Blackburn's VA physician at the time, Dr. Hunt, testified that the 2015 order for a colonoscopy was appropriate at the time because Mr. Blackburn had been complaining of rectal bleeding.  (Doc. # 24-4 at 17-19).  Plaintiffs' expert, Dr. Solny, similarly opined that rectal bleeding presented "a stand-alone indication for investigation" that should have prompted a diagnostic colonoscopy.  (Doc. # 24-10 at 68).

The fact that there is a difference in how the experts believe Mr. Blackburn should have been treated—and when he should have received a colonoscopy—shows there is a dispute of material fact in this case.  Finding otherwise would require the Court to choose one expert's opinion over the other, which is not the role of the district court at the summary judgment stage.  *Bowling v. United States*, No. 5:11-CV-140-JMH, 2012 WL

5178436, at *6 (E.D. Ky. Oct. 17, 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Therefore, the Court concludes there is a dispute of material fact as to the standard of care and whether Defendant breached that standard.

### 2. Causation

Next, Plaintiffs must introduce testimony that shows the breach of the standard of care was the proximate cause of Mr. Blackburn's injuries.  *See Heavrin*, 2003 WL 21673958, at *1.  "To be the proximate cause of the injury, the conduct in question must be a substantial factor in causing the injury." *Ashland Hosp. Corp. v. Lewis*, 581 S.W.3d 572, 577 (Ky. 2019).  "Such proximate causation must be shown by a reasonable degree of medical probability, rather than mere possibility or speculation." *Ashland Hosp. Corp. v. Lewis,* 581 S.W.3d 572, 577-78 (Ky. 2019).  Causation is a mixed question of law and fact, but "if reasonable minds can differ as to whether a defendant's conduct was a substantial factor in causing a plaintiff's injuries, it is an issue of fact for trial." *Bowling v. United States*, No. 5:11-CV-140-JMH, 2012 WL 5178436, at *5 (E.D. Ky. Oct. 17, 2012) (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 92 (Ky. 2003)).

Here, Dr. Kwon's testimony supports a finding that there is a dispute of fact regarding whether the standard of care had been breached, as Plaintiffs argue it was, and whether that the breach was a proximate cause of Mr. Blackburn's ultimate diagnosis. Dr. Kwon testified as to the growth rates of cancer and the progression rates from polyps to cancer, which is information necessary to determine when a diagnostic colonoscopy would have detected Mr. Blackburn's cancer.

Defendant's argument that Plaintiffs cannot meet their burden on the element of causation rests primarily on its assertion that Dr. Kwon's testimony is inadmissible and

14

overly vague. (*See* Doc. # 13 at 21). However, Dr. Kwon's opinion testimony, which the Court has already concluded is admissible, would support a finding of proximate causation. Dr. Kwon opined in his expert report that polyps can take as many as 10 to 15 years to develop into cancer, but "cancers diagnosed within a few years are believed to arise from missed lesions or the development of a new tumor not seen on previous [sic] colonoscopy." (Doc. # 23-13 at 10). Dr. Kwon further responded to Defendant's experts' testimony stating that "this [was] not the most rapidly growing tumor" and that "it takes several years for the untreated polyps to turn into cancer." (*Id.* at 13). Based on this testimony by Dr. Kwon, it is feasible that a breach of the standard of care by Defendant was the proximate cause of Mr. Blackburn's injuries. Therefore, granting summary judgment at this stage would be inappropriate.

### III. CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment, or in the alternative, Motion to Exclude Plaintiffs' Experts (Doc. # 23) is **DENIED**, and

(2) **Not later than March 8, 2024**, the parties shall submit a **Joint Status Report** indicating available dates for the bench trial in 2024, and whether the parties would be amenable to a Court-facilitated mediation before the presiding Magistrate Judge at Pikeville.

This 15th day of February, 2024.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\ORDERS\PikeCivil\2022\22-21 MSJ MOO.docx